KATZMELINGER
370 LEXINGTON AVENUE, SUITE 1512
NEW YORK, NEW YORK 10017
www.katzmelinger.com

| | |
|---|---:|
| Eliseo Cabrera, Esq.<br>Katz Melinger PLLC | t: 212.460.0047<br>f: 212.428.6811<br>edcabrera@katzmelinger.com |

March 31, 2023

**Via ECF**
Honorable Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

  Re: *Melendez v. LL Flooring Designs, Inc. et al.*
     **Civil Action No. 1:22-cv-07169-RA**

Your Honor:

  We are attorneys for the parties in this matter and write jointly to seek approval of the parties' agreement to settle Plaintiff's claims, which include claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law ("NYLL"). The parties write to respectfully request that the Court approve the parties' settlement agreement, a copy of which is submitted herewith as **Exhibit 1**, and allow the parties to discontinue the matter with prejudice pursuant to Fed. R. Civ. P. 41.

  **Claims and Defenses**

  Eddy Melendez commenced this collective action against LL Floor Designs, Inc. and Lester Lockwood (collectively, "Defendants") asserting five (5) causes of action, including unpaid overtime wages in violation of the FLSA and the NYLL and failure to timely pay wages and to provide payroll notices and wage statements under the NYLL.

  Plaintiff alleges that he worked for Defendants as a construction worker from in or around August 2016 until in or around April 2022. Plaintiff's job duties included, but were not limited to, pouring concrete into floors, designing flooring plans for customers, and polishing the flooring once installed. Plaintiff alleges that during his employment with Defendants he worked an average of approximately fifty (50) hours per week. Plaintiff alleges that Defendants paid Plaintiff a fixed hourly rate for all hours worked, including the hours Plaintiff worked over forty (40) per week, which began at $14.00 per hour and increased incrementally during his employment until reaching $24.00 per hour in or around December 2021.

Plaintiff alleges that Defendants failed to pay Plaintiff overtime premiums for the hours he worked in excess of forty (40) per week. Plaintiff also alleges that he was not provided with payroll notices or wage statements as required under NYLL §§ 195(1) and (3). Plaintiff further alleges he was not paid all of his owed wages on a weekly basis as required under NYLL § 191(1)(a)(i).

Based on the foregoing, Plaintiff estimates that he is owed $19,310.00 in unpaid overtime wages; $19,310.00 in liquidated damages; and $10,000.00 for wage and payroll notice penalties, for a total of $48,620.00, plus interest, costs, and reasonable attorneys' fees.

Defendants dispute the hours Plaintiff worked and contend that Plaintiff was paid properly throughout his employment. For these reasons, Defendants deny that they owe Plaintiff wages or other damages.

### **Settlement**

The parties participated in Court-annexed mediation on December 9, 2022. Although the parties did not reach an agreement at mediation, the parties continued to discuss settlement with the help of the mediator over the subsequent weeks and ultimately agreed to settle Plaintiff's claims for a total of $40,000.00 as described in the parties' settlement agreement attached hereto as **Exhibit 1**. The amount agreed upon reflects a mutual desire to reach an amicable resolution in this matter without additional litigation. As explained in further detail below, the parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

### **The Proposed Settlement Should Be Approved**

1. The settlement amount is fair and reasonable

The parties' proposed settlement agreement warrants approval as it is fair, reasonable, and equitable. Indeed, the agreement reflects a reasonable compromise of Plaintiff's FLSA and NYLL claims rather than a mere waiver of statutory rights brought about by Defendants' overreaching. Here, there is no doubt that the settlement did not come about because of "overreaching" by Defendants. To the contrary, Plaintiff is represented by competent counsel and the settlement amount, $40,000.00, results in a recovery to Plaintiff, after expenses and proposed attorneys' fees, of $25,992.00, which nets Plaintiff 100% of his unpaid overtime wages and a significant amount of additional damages. This sum is more than fair and reasonable, particularly given the early stage at which the settlement was reached; the time and costs associated with continued ligation; the risk that Plaintiff would not prevail on all of his claims after a trial; and the risk that Plaintiff would not be able to collect on a judgment even if Plaintiff prevailed at trial.

2. The settlement agreement was the result of arm's length negotiations by the parties

The proposed settlement is also the product of negotiation between represented parties following extensive settlement discussions, including Court-annexed mediation. Plaintiff and Defendants hold opposing views on the merit and value of Plaintiff's claims; however, the arm's length bargaining between the represented parties, along with the information and records shared prior to and during settlement negotiations, weighs in favor of finding the settlement reasonable. Moreover, nothing in the record before the Court indicates that the proposed settlement has been

achieved through fraudulent or collusive conduct. Through pre-mediation discovery and candid discussions between counsel, the parties can assess the strengths and weaknesses of the asserted claims and their respective positions. *See, e.g.*, *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("In considering whether a settlement is fair and reasonable, the principal question is whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching'") (citation and internal quotation marks omitted); *Aponte v. Comprehensive Health Mgmt., Inc.*, 2013 U.S. Dist. LEXIS 47637, at *12 (S.D.N.Y. Apr. 2, 2013) (courts typically "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement") (citation and internal quotation marks omitted). Furthermore, since Plaintiff is no longer employed by Defendants, coercion is unlikely. *See, e.g.*, *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Cisneros v. Schnipper Rest. LLC,* 2014 U.S. Dist. LEXIS 2111, at *2-3 (S.D.N.Y. Jan. 8, 2014) ("Although the FLSA places strict limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver, these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here") (citation and internal quotation marks omitted).

Additionally, after weighing the factors, the settlement should be allowed to proceed, as: (i) Plaintiff's alleged injuries will not recur as Plaintiff is no longer employed by Defendants; (ii) Defendants explicitly deny any wrongdoing; and (iii) continuing to develop the record will only serve to enlarge costs on both sides and will not serve any useful purpose. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d at 335-36.

3. Plaintiff's counsels' fees are reasonable

Lastly, the parties agree that the settlement amount is a reasonable compromise of all the parties' positions, and the proposed amount of attorneys' fees is also fair and reasonable as Plaintiff's counsel's own compensation does not adversely affect the extent of the relief obtained by counsel on behalf of Plaintiff. *See Wolinsky,* 900 F. Supp. 2d at 336-37; *Cisek v Natl. Surface Cleaning, Inc.*, 954 F. Supp. 110, 111 (S.D.N.Y. 1997) (finding that the sum sought by plaintiffs' counsel was reasonable, the settlement was untainted by conflict of interest and there was "no reason to conclude that plaintiffs' counsel benefited at the expense of their clients"). Thus, the settlement does not favor Plaintiff's counsel over Plaintiff.

Under the proposed agreement, Plaintiff's counsel would recover $1,012.00 as reimbursement for costs and expenses[1] and $12,996.00 in fees. Under Plaintiff's contingency fee agreement, Plaintiff's counsel is entitled to recover, out of Plaintiff's settlement amount, fees totaling one-third of any amounts recovered on behalf of Plaintiff after reimbursement of costs and expenses. This fee should be approved, as "[a]n award of one third of the fund is consistent with what reasonable, paying clients pay in contingency employment cases." *Flores v. Anjost Corp.,* 2014 U.S. Dist. LEXIS 11026, at *25 (S.D.N.Y. Jan. 28, 2014); *see also Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit."). The

---

[1] Plaintiff's costs and expenses are as follows: $402.00 for the initial filing fee in this court; $402.00 for the initial filing fee in the District Court of New Jersey, where this case was originally filed; and $208 in process server fees.

proposed fee award of one-third should also be approved because it was consensual and agreed to by Plaintiff. *See Mireku v. Red Vision Sys., Inc.,* 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (approving settlement and noting the consensual nature of the fee arrangement).

As indicated by Plaintiff's counsel's time records, attached hereto as **Exhibit 2**, Plaintiff's counsel has spent a total of 59.90 hours on this matter as follows; Kenneth Katz, 0.1 hours, Nicole Grunfeld, 7.70 hours, Adam Sackowitz, 0.4 hours, Eliseo Cabrera, 48.40 hours, and Jessica Tilton, 3.30 hours. Plaintiff's counsels' hourly rates, $575.00; $525.00; $435.00; $375.00; and $150.00, respectively, are reasonable based on Plaintiff's counsel's experience and is in line with the rates charged by attorneys in this district. *See Brown v. City of New York*, 2020 WL 6075524, at *4 (S.D.N.Y. Oct. 15, 2020) (approving rates up to $550 per hour for partners and collecting cases).

Mr. Katz is the founding member and managing partner of Katz Melinger PLLC, a boutique firm established in 2012. Mr. Katz earned his B.S. in 2000 from the State University of New York at Albany, and his J.D. in 2003 from Hofstra University School of Law, with an award recognizing his achievements in the employment law field. Mr. Katz was admitted to the Bar of the state of New York in 2004 and New Jersey in 2016, and his practice is focused primarily on litigation, with substantial experience handling wage and hour matters.

Ms. Grunfeld is a partner at Katz Melinger PLLC, where she has worked for more than nine years. She earned her B.A. in 1998 from Yale University, and her J.D. in 2004 from New York University School of Law. Ms. Grunfeld was admitted to practice in the courts of New York in 2005 and New Jersey in 2018, and has focused on Plaintiff's employment matters for more than fifteen years. She currently serves as Vice President of the Board of the New York chapter of the National Employment Lawyers' Association.

Mr. Sackowitz is the senior associate at the firm. Mr. Sackowitz was admitted to the Bars of the states of California in 2014, New York in 2015, and New Jersey in 2016, and has focused his practice on employment law for more than seven years. Mr. Sackowitz earned his B.S. from Cornell University in 2009 and his J.D. from the University of California at Los Angeles School of Law in 2014.

Mr. Cabrera earned his B.A. from the University of California, Berkeley in 2007 and his J.D. from City University of New York School of Law in 2015. Mr. Cabrera has focused his practice on employment law since May 2019 and has been a member in good standing of the New York Bar since 2017.

Ms. Tilton is a 2L at Mitchell Hamline School of Law in Saint Paul, Minnesota and worked for Katz Melinger PLLC as a law clerk in the summer of 2022.

The $12,996.00 fee sought by Plaintiff's counsel is below Plaintiff's counsel's "lodestar" amount of $22,919.00, and is therefore reasonable. *See e.g. Huerta v. Aura Wellness Spa Corp.*, 2021 US Dist LEXIS 34360, at *3 (S.D.N.Y. Feb. 24, 2021) (finding that the sum sought by plaintiffs' counsel was reasonable, even though the fees slightly exceed thirty percent of the total recovery because "it is less than the 'lodestar' amount for Plaintiff's counsel.").

Hon. Ronnie Abrams<br>
March 31, 2023<br>
Page 5

As set forth herein, Plaintiff's counsel negotiated a highly favorable settlement for Plaintiff, in which Plaintiff recovered a significant portion of his alleged unpaid wages, which were strongly contested by Defendants, at an early stage of the lawsuit.[2] Additionally, by reaching a settlement with Defendants, Plaintiff avoids the risk of either receiving an unfavorable outcome in this matter or, if Plaintiff prevails on his claims, attempting to enforce a judgment against Defendants.

Accordingly, the parties respectfully request judicial approval of the parties' proposed settlement agreement, and further request permission to submit a stipulation of dismissal with prejudice consistent with the requirements of Fed. R. Civ. P. 41(1)(a)(ii).

Respectfully submitted,

| | |
|---|---|
| */s/   Eliseo Cabrera* | */s/   Marc Rapaport* |
| Eliseo Cabrera, Esq. | Marc Rapaport |
| Katz Melinger PLLC | Rapaport Law Firm, PLLC |
| 370 Lexington Avenue, Suite 1512 | 80 Eighth Avenue, Suite 206 |
| New York, New York 10017 | New York, New York 10011 |
| T: (212) 460-0047 | T: (212) 382-1600 |
| edcabrera@katzmelinger.com | mrapaport@rapaportlaw.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |

---

[2] The $40,000.00 settlement amount represents 82% of Plaintiff's total estimated damages and is therefore considered highly successful. *See e.g., Pinzon v. Jony Food Corp.*, 2018 WL 2371737, at *2 (S.D.N.Y. May 24, 2018) ("Settling for even thirty percent of the total potential recovery is significant enough in this case to weigh in favor of approval—particularly in light of the early procedural posture of the case and the value to Plaintiff of receiving such a large lump sum without the risk and delay inherent in litigation."); *see also, Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. 2015) (settlement of approximately 25% of estimated damages "is a substantial proportion of the maximum possible recovery").